### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| BRANDON W. LEIGH, | : | Case No. 3:24-cv-192 |
|  | : |  |
| Petitioner, | : |  |
|  | : | Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
|  | : |  |
| WARDEN, LONDON | : |  |
| CORRECTIONAL INSTITUTION | : |  |
|  | : |  |
| Respondent. | : |  |

---

### REPORT AND RECOMMENDATIONS

---

Brandon W. Leigh, a state prisoner proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (ECF No. 1, 19), the Return of Writ (ECF No. 11, 20), Petitioner's Traverse (ECF No. 25), and the state court record. (ECF No. 10, 10-1, 10-2, 10-3, 10-4, 10-5, 27-1. 27-2, 27-3, 27-4). For the reasons that follow, it is **RECOMMENDED** that this action be **DENIED** and **DISMISSED**.

### I.     FACTUAL BACKGROUND

On August 31, 2018, a Montgomery County, Ohio grand jury indicted Leigh on four counts in connection with the death of Keyona Murray and her unborn child, including murder in violation of Ohio Rev. Code Ann. § 2923.161, involuntary manslaughter in violation of O.R.C. §2903.04(A), improperly discharging a firearm at or into a habitation, in violation of violation of O.R.C. §2923.16(A)(1), and having weapons while under disability, in violation of O.R.C §2923.13(A)(2). The first three charges included a firearm specification.

The following represents the relevant facts and procedural history as reported by the Second District Court of Appeals ("Court of Appeals"):

{¶ 3} According to the State's evidence at trial, at approximately 8:20 p.m. on February 16, 2018, multiple gunshots were fired into the rear of the home of Jacqueline Mooty, located at 122 Lorenz Avenue in Dayton. The shots came from an alley behind the home. When the shooting occurred, Mooty was home with her boyfriend, her six children (ranging in age from 6 to 22 years old), her two-year-old granddaughter, and others. Keyona Murray, Mooty's 22-year-old daughter, was shot in the head in Mooty's first-floor rear bedroom. Keyona, who was approximately 11-weeks' pregnant, died from her injuries at the hospital.

{¶ 4} The main issue at trial was the identity of the shooter. One of Keyona's brothers, Marrico Murray, testified that he had met Leigh through his (Marrico's) close friend, Shareef Tillman. Marrico communicated with Leigh using Facebook Messenger, where Leigh used the profile name "Brando So Humble." On February 14, 2018, while Marrico, Tillman, and Leigh were together, Leigh showed the others his 9mm handgun. Marrico testified that Tillman put the gun in his pocket and left with it. Believing that Marrico had stolen the gun, Leigh then sent Marrico a series of messages that Marrico interpreted as warnings to return the gun. On February 15, 2018, the day before the shooting, Marrico received a final message from Leigh, indicating "it's on now," as Marrico interpreted it.

{¶ 5} Marrico did not immediately identify Leigh as a suspect to the police. After additional questioning several days following the shooting, Marrico showed the Facebook messages to detectives. During the investigation, Detective Zachary Farkas obtained additional Facebook messages between Leigh and several other individuals in which Leigh discussed getting robbed and his efforts to locate Marrico.

{¶ 6} Two additional State's witnesses connected Leigh to the shooting. Aleea Lee, who thought of Leigh as a son, testified that, at approximately 7:30 to 8:00 p.m. on the night of the shooting, she drove Leigh to a recreation center near Third Street and James H. McGee Boulevard. Between 8:30 and 8:45 p.m., Leigh asked to be picked up at the intersection of Oakridge Drive and Gramont Avenue, a location near 122 Lorenz Avenue.

{¶ 7} Angela Williams, who had lived at Lee's home with her girlfriend, stated that a few days prior to the shooting, she overheard a conversation between Leigh and others where Leigh spoke about "needing to get his sh*t back." Williams stated that Leigh was referring to a pistol. Williams also heard Leigh talk to his sister on the telephone about meeting so that he could get another gun; he stated he needed it to get his property back. Leigh had left shortly after the conversation with his sister. A few days after the shooting, Leigh asked Williams if she had heard what had

2

happened. When Williams asked Leigh if he had something to do with it, Leigh told her that he was there and "did it."

{¶ 8} During the afternoon of February 23, 2018, a week after the shooting, the police went to Lee's home and arrested Leigh. Before the police arrived at the house, Lee and Leigh saw a detective drive by in a truck. Leigh said to Lee, "I'm about to go to jail."

{¶ 9} Leigh was 17 years old when the shooting occurred. Upon his arrest, he was charged by complaint with murder in juvenile court. On April 3, 2018, the State filed an amended complaint adding charges of involuntary manslaughter and improper discharge of a firearm at or into a habitation, each with firearm specifications, as well as having weapons while under disability. It further sought to have the matter transferred to adult court. On August 3, 2018, the juvenile court conducted a probable cause hearing during which four witnesses testified, including Angela Williams. The juvenile court found that there was probable cause to believe that Leigh was responsible for the offenses, and it ordered the case transferred to the general division of the common pleas court. On August 31, 2018, Leigh was indicted for murder, involuntary manslaughter, and improper discharge of a firearm at or into a habitation, each with a firearm specification. He was also indicted for having weapons while under disability.

{¶ 10} In March 2020, the matter proceeded to a bench trial on having weapons while under disability and a jury trial on the remaining charges and specifications. The State presented 13 witnesses and approximately 100 exhibits. Williams did not appear for trial as required by subpoena, and the police were unable to locate her. The court found that she was an unavailable witness, and it permitted an audio-recording of her probable cause hearing testimony to be played for the jury.

{¶ 11} Leigh testified on his own behalf. He denied having a disagreement with Marrico, sending all the Facebook messages that were presented at trial, and knowing where Marrico lived. He stated that he had stopped using his "Brando So Humble" account prior to February 2018. Leigh further testified that Lee did not take him to the recreation center on February 16. He stated that he went to school that day, that Lee picked him up and took him to her home, and that his mother picked him up around 8:30 p.m. and took him home. Leigh denied that he had committed the shooting, that he had admitted to Williams that he did it, and that he had said that he was going to jail on February 23. Leigh claimed that he had never been to 122 Lorenz Avenue.

(ECF No. 10 at PageID# 214-217).

Leigh was sentenced to thirty years to life. (*Id.* at PageID# 54-59). He appealed his conviction to the Court of Appeals. (*Id.* at PageID# 60-67). Leigh's counsel filed an *Anders*[1] brief that identified two potential issues for appeal but requested permission to withdraw as counsel because he believed the issues were frivolous. (*Id.* at PageID# 68-84). After reviewing Leigh's subsequent pro se brief, the Court of Appeals entered an order setting aside the *Anders* brief and appointing new counsel to represent Leigh. (*Id.* at PageID# 126-149, 152-153). Leigh's new counsel filed a brief that asserted five assignments of error:

(1) Did the trial court commit reversible error by admitting hearsay testimony of Angela Williams and admitting her preliminary hearing testimony in violation of [Leigh's] constitutional rights?

(2) Did the trial court commit reversible error by allowing testimony that asserted [Leigh] sent Facebook Messenger messages, which contained hearsay, and that contained evidence of other bad acts?

(3) Was [Leigh] denied effective assistance of counsel by trial counsel's failure to object to authentication of Angela Williams' audio, a prejudicial error, and other acts evidence?

(4) Did cumulative error deny [Leigh] a fair trial?

(5) Did the state fail to prove all elements of the charged offenses or [Leigh's] convictions?

(*Id.* at PageID# 166).

On January 13, 2023, the Court of Appeals issued a decision affirming Leigh's conviction. (*Id.* at PageID# 213-251). Leigh filed a Notice of Appeal with the Ohio Supreme Court and a

---

[1] *Anders v. California*, 386 U.S. 738, 744 (1967) ("[I]f counsel finds his case to be wholly frivolous…he should so advise the court and request permission to withdraw. That request must…be accompanied by a brief referring to anything in the record that might arguably support the appeal…; the court…then proceeds…to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal…or proceed to a decision on the merits…[I]f [the court] finds any of the legal points arguable on their merits…it must…afford the indigent the assistance of counsel to argue the appeal.")

Memorandum in Support of Jurisdiction. (*Id.* at PageID# 255-315). He asserted three propositions of law:

> (1) Appellate courts review alleged Confrontation Clause violations de novo. The Second District Court of Appeals erred as a matter of law when it rejected Brandon Leigh's Confrontation Clause claim under an abuse-of-discretion standard of review.
>
> (2) Under *Crawford*, assessing the admissibility of testimonial hearsay under the Confrontation Clause calls for a two-step approach. First, courts must decide whether testimonial hearsay is admissible under the rules of evidence. Second, if so, they must then separately decide whether admission of that evidence violates the Confrontation Clause. A court errs as a matter of law when it collapses these separate levels of protection into a single rule-based admissibility analysis.
>
> (3) Under current Ohio law, an opportunity to question a witness at a preliminary hearing, especially one in juvenile court, does not satisfy the Confrontation Clause's guarantee of an adequate "prior opportunity for cross-examination." Alternatively, the adequacy of such hearings must be determined on a case-by-case basis where the focus of preliminary questioning and the extent or lack of discovery must be considered.

(*Id.* at PageID# 258). On May 9, 2023, the Ohio Supreme Court declined jurisdiction. (*Id.* at PageID# 328).

On January 27, 2023, Leigh filed an App. R. 26(A)(1) Application for Reconsideration of his appeal with the Court of Appeals. (*Id.* at PageID# 329-348). He raised three issues for reconsideration: (1) his trial counsel was ineffective because Juror #15's actual or implied bias deprived him of a fair trial; (2) the Court of Appeals erred in its conclusion on sufficiency of the evidence, the admission of Angela Williams testimony, and the admission of improper character evidence; and (3) and his Fourth Amendment rights were violated when he was subject to a warrantless arrest. (*Id.*). The Court of Appeals ruled that Leigh's Application was untimely by four days. (*Id.* at PageID# 356). It alternatively concluded that Leigh's first two issues lacked merit,

and the third was not properly before the court because it was not raised in the original appeal. (*Id.* at PageID# 353-365).

Leigh appealed the denial of his Application for Reconsideration to the Ohio Supreme Court. (*Id.* at PageID# 366-367). He argued a single proposition of law:

> Where triggered, the doctrine of implied bias creates a conclusive presumption of juror bias as a matter of law such that the law infers bias from the factual circumstances. As such, defendants need not prove actual or personal bias when invoking the implied bias doctrine; they need only show that the facts give rise to the presumption.

(*Id.* at PageID# 369). The Ohio Supreme Court declined jurisdiction. (*Id.* at PageID# 404).

## II.   FEDERAL HABEAS PROCEEDINGS

On July 3, 2024, Leigh filed his original federal habeas petition, which asserts five grounds for relief:

**GROUND ONE**:   Trial court failed to prove all elements of the charged offenses of petitioner conviction were against the manifest weight of the evidence.

**<u>Supporting Facts</u>:**   The State failed to prove that he discharged a firearm at a house, a key element of all his convictions. He states: "[N]o one testified that Appellant ever possessed a firearm after Marrico took his. Additionally, if he discharged a firearm in the neighborhood, no testimony established that he did so with an awareness that a bullet would hit a house." Petitioner argues that, because the State failed to present evidence that he improperly discharged a firearm at or into a habitation, all his convictions were based on insufficient evidence and against the manifest weight of the evidence.

**GROUND TWO:**   The trial court committed reversible error by allowing testimony that Leigh sent messages via Facebook Messenger, which contained hearsay and discussed other bad acts.

**<u>Supporting Facts</u>:**   The trial court "erred by allowing testimony that asserted [he] sent Facebook Messenger messages, which contained hearsay, and that contained evidence of other bad acts." Petitioner argues that the State failed to produce any evidence that petitioner, and not someone else, sent the relevant messages from the Brando So Humble Facebook account. He further asserts that the messages

should have been excluded because they contained inadmissible hearsay and evidence of prior bad acts.

**GROUND THREE:** Trial counsel's failure to object to authentication of Angela Williams' audio, a prejudicial juror, and other acts evidence fell below the standard of reasonableness and denied Petitioner effective assistance of counsel.

**Supporting Facts:** Counsel failed to object to the audio testimony of Angela Williams, allowed a prejudicial juror by failing to object and that juror was the Forman, and trial counsel allowed prejudicial other acts evidence to be put forth without objection.

**GROUND FOUR:** Cumulative error denied Petitioner a fair trial.

**Supporting Facts:** Petitioner claims that multiple errors deprived him of a fair trial.

**GROUND FIVE:** Trial court failed to prove all elements of the charged offenses or Petitioner conviction were against the manifest weight of the evidence.

**Supporting Facts:** There was insufficient evidence to convict petitioner of the charges of Murder, Involuntary Manslaughter, and Discharging a Firearm.

(ECF No. 1-1 at PageID# 9-13). Leigh subsequently sought leave to amend his petition (ECF No. 16), which was granted (ECF No. 18), and on February 26, 2025, Leigh filed an Amended Petition, which asserts five additional claims:

**GROUND SIX:** Appellate courts' review alleged confrontation clause violation de novo. The Second District Court of Appeals erred as a matter of law when it rejected Brandon Leigh's Confrontation Clause claim under an abuse of discretion standard of review.

**Supporting Facts:** The Second District correctly recounted that Brandon "argue[d] that Williams's probable cause hearing testimony constituted hearsay and that its admission violated his rights under the Confrontation Clause of the Sixth Amendment."

**GROUND SEVEN:** Under *Crawford* assessing the admissibility of testimonial hearsay under the Confrontation clause calls for a two-step approach. First courts must decide whether the testimonial hearsay is admissible under the rules of evidence. Second if so, they must then separately decide whether admission of that evidence violates the confrontation clause. A court errs as a matter of law when it collapses these

7

separate levels of protection into a single rule-based admissibility analysis.

**Supporting Facts:** When determining whether the introduction of the testimonial hearsay statements of an unavailable witness violates a defendant's confrontation clause rights, courts must first assess their admissibility under the evidence rules, and then, if otherwise admissible, separately determine whether their admission violates the constitution's demands. Otherwise, the hearsay rule swallows the constitution protection.

**GROUND EIGHT:** An opportunity to question a witness at a preliminary hearing especially one in juvenile court does not satisfy the Confrontation Clause's guarantee of an adequate "prior opportunity for cross-examination." Alternatively, the adequacy of such hearing must be determined on a case-by-case basis where the focus of a preliminary questioning and the extent and lack of discovery must be considered.

**Supporting Facts:** The Second District effectively conflated Petitioner's constitutional claim for a non-constitutional one.

**GROUND NINE:** The doctrine of implied bias creates a conclusive presumption of juror bias as a matter of law such that the law infers bias from the factual circumstances. As much, defendants need not prove actual or personal bias when invoking the implied bias doctrine; they need only show that the facts have given rise to the presumption.

**Supporting Facts:** Juror# 15 should have been removed based on the similarity between the facts in this case and the prospective juror's drive-by shooting incident.

**GROUND TEN:** Petitioner['s] Fourth Amendment rights were violations when he was subjected to a warrantless arrest.

**Supporting Facts:** The Petitioner was arrested without an arrest warrant the arrest was not made at his residence. As such the petitioner will likely be deeming to have been in a "public place" thus permitting a warrantless arrest.

(ECF No. 19 at PageID# 1395-1400).

Respondent filed a Return of Writ for both Petitions. (ECF No. 11, 20). Respondent contends that the only claims Leigh properly preserved for federal habeas review are the three claims concerning the Confrontation Clause—Grounds Six, Seven, and Eight (ECF No. 20 at

8

PageID# 1410), and these claims are meritless. (*Id.* at PageID# 1413-1422). Respondent argues that the remaining claims are procedurally defaulted because they were not presented to the Ohio Supreme Court. (*Id.* at PageID# 1411). Respondent also argues that Grounds Two, Four, and Ten are non-cognizable. (*Id.* at PageID# 1424-1426, 1432). Leigh filed a Traverse on June 23, 2025, which includes additional arguments on the merits of his claims and a blanket denial that any are procedurally defaulted. (ECF No. 25).

## III.    STANDARDS OF REVIEW

### A. AEDPA

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). *See also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA...imposes a highly deferential standard for evaluating state–court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**B. Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires,

and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

## IV.  DISCUSSION

### A. Procedural Default

Respondent argues that Grounds One, Two, Three, Four, Five, Nine, and Ten are procedurally defaulted. (ECF No. 20 at PageID# 1410-1411). The Court agrees. To exhaust state court remedies, a claim must be fairly presented "to every level of the state courts in one full round." *Ambrose v. Romanowski*, 621 F. App'x 808, 814 (6th Cir. 2015).

Leigh presented Grounds One, Two, Three, Four, and Five to the Court of Appeals as assignments of error (ECF No. 10 at PageID# 166) but failed to include those claims in his appeal to the Ohio Supreme Court. (*Id.* at PageID# 258). Leigh did not include Ground Ten as an assignment of error to the Court of Appeals, a fact that was pointed out when the Court of Appeals denied Leigh's Application for Reconsideration. (*Id.* at PageID# 361). Accordingly, Leigh failed to present Grounds One, Two, Three, Four, Five, and Ten to both the Court of Appeals and the Supreme Court of Ohio and these grounds are procedurally defaulted.

In Ground Nine, Leigh argues that the trial court erred by seating a biased juror. (ECF No. 19 at PageID# 1398). Leigh presented an assignment of error to the Court of Appeals that his counsel was ineffective for failing to challenge Juror #15. (*Id.* at PageID# 166). In his Application for Reconsideration, Leigh argued that the Court of Appeals overlooked actual or implied juror bias. (*Id.* at PageID# 329-348). When the Court of Appeals denied Leigh's Application for Reconsideration, it treated Leigh's argument as an extension of the ineffective assistance of counsel claim he raised in his appeal. (*Id.* at PageID# 356-360). But when Leigh appealed that decision to the Supreme Court of Ohio, he presented the claim solely as a trial court error. (*Id.* at PageID# 369). Thus, Leigh failed present Ground Nine's trial court error to both the Court of Appeals and the Ohio Supreme Court, and it is also procedurally defaulted.

A petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedure." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). The deadlines have long passed for Leigh to properly present Grounds One, Two, Three, Four, Five, Nine, and Ten to both the Court of Appeals and Ohio Supreme Court. *See* Ohio App. R. 4, Ohio S. Ct. Prac. R. 7.01.

Leigh procedurally defaulted Grounds One, Two, Three, Four, Five, Nine, and Ten by failing to properly exhaust his state remedies, which are now unavailable. He offers no potential excuse for the procedural default. (ECF No. 25). In any event, as explained below, all ten of Leigh's claims fail on the merits.

### B. Merits of the Claims Properly Before the Court

Grounds Six, Seven, and Eight are interrelated and will be addressed together. In Ground Six, Leigh contends that the Court of Appeals erred by reviewing his Confrontation Clause claim under an abuse of discretion standard. (ECF No. 19 at PageID# 1395). In Ground Seven, Leigh contends that the Court of Appeals improperly analyzed the merits of his Confrontation Clause claim. (*Id.* at PageID# 1396). In Ground Eight, Leigh contends that his Confrontation Clause claim has merit because the juvenile court hearing did not provide an adequate opportunity for cross-examination of the unavailable witness. (*Id.* at PageID# 1397).

Leigh was arrested on February 23, 2018. (ECF No. 10 at PageID# 216). He was charged in juvenile court with murder, involuntary manslaughter, improper discharge of a firearm at or into a habitation, and having weapons while under disability. (ECF No. 10-1 at 446-447). The state sought to have the matter transferred from juvenile court. (ECF No. 10 at PageID# 216). The

14

juvenile court held a hearing on August 3, 2018. (ECF No. 10-1), to determine whether probable cause existed to try Leigh as an adult. *See* OH ST JUV P Rule 30 ("In any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult…").

Four witnesses testified at the preliminary hearing in juvenile court, including Angela Williams. (ECF No. 10-1). Williams testified that she lived with her girlfriend at Aleea Lee's home, where Leigh was a frequent overnight visitor. (*Id.* at PageID# 533-535). According to Williams, a few days before Keyona Murray's murder, she overheard Leigh speaking to someone in the living room, saying that he "needed to get his shit back." (*Id.* at PageID# 536-537). Williams testified that it was her impression Leigh was referring to a pistol. (*Id.* at PageID# 538). Williams testified that she also heard Leigh on the telephone with his sister. (*Id.* at PageID# 540). According to Williams, Leigh was making plans with his sister to get a gun so he could "get his shit back." (*Id.*).

Williams testified that she found out about Keyona Murray's murder from Facebook posts. (*Id.* at PageID# 542). Williams said that it was "obvious" to her that the murder was connected to Leigh's conversations she overheard. (*Id.* at PageID# 542). Williams testified that she became confident that Leigh was involved in Murray's murder because of a conversation she had with Leigh:

> He walked up to me, he said, Auntie, you -- did you hear about what happened? I said, what you talking about? He said, the shooting. I said where, in Westwood, that girl that was pregnant? He said, yeah. He said -- I said, why, you have something to do with that? He said, what you mean I have something to do with it? I did it.

(*Id.* at PageID# 542-544). Williams also testified about the day of the shooting:

> Q:    Uhm-hmm. Okay. So how do you know Aleea took [Leigh] to the house on the night of the shooting?
> A:    There was a group discussion about where they was going, and when they came back that same night, I heard them come in, but I heard them like -- like I want to say hyped, like –
> Q:    You say they were hyped?
> A:    Um-hmm.
> Q:     Okay. And it's your understanding that that was the same night as the shooting on Lorenz?
> A:    That's what I felt -- I felt like. I can't say for sure.

(*Id.* at PageID# 550).

On cross-examination, Williams testified that she did not know Leigh or anyone that lived in the house on Gard before she moved in two months before the shooting. (*Id.* at PageID# 556-557). Williams testified that Leigh did not talk to her often. (*Id.* at PageID# 560-561). She also admitted that she could not recall any of the dates of the events she testified to on direct examination. (*Id.* at PageID# 561-563). Williams said that she did not know who Leigh was talking to when she overheard the conversation about "getting his shit back," and she did not call the police when Leigh reportedly confessed to her. (*Id.* at PageID# 564, 572).

Leigh's case was transferred to the adult division of the Montgomery County Court of Common Pleas. (ECF No. 10-1 at PageID# 423). Leigh was indicted by the grand jury on August 31, 2018. (*Id.* at PageID# 34-37). He was arraigned and plead not guilty on September 6, 2018. (*Id.* at PageID# 38). Leigh's trial was originally set for November 4, 2019. (*Id.* at PageID# 418). On October 25, 2019, the state filed a motion to declare Angela Williams unavailable and use her testimony from the August 3, 2018, hearing at trial. (*Id.* at PageID# 418). The state argued that it could not locate and serve Angela Williams with an appearance subpoena and the United States Supreme Court opinion in *Crawford v. Washington*, 541 U.S. 36 (2004), permitted the state to use her prior testimony at trial because she was cross-examined by Leigh's counsel during the juvenile court hearing. (ECF No. 27-1 at PageID# 1466-1471). The defense opposed the motion (*id.* at

PageID# 1473-1476), but the issue remained unresolved at the time because the trial was continued, and Leigh was appointed new counsel. (*Id.* at PageID# 417)

Leigh's trial started on March 9, 2020. (ECF No. 10-3). The same day, the prosecution sought and received a material witness warrant for Angela Williams. (*Id.* at PageID# 1478). According to the warrant request, Williams was served with a subpoena for her appearance at trial on January 24, 2020, but she failed to appear as directed. (*Id.*). The trial court conducted a hearing on the state's motion to declare Williams an unavailable witness (ECF No. 27-5 at 1485-1486) on March 10, 2020. (ECF No. 10-3 at PageID# 870-883). Detective Zach Farkas testified that Dayton Police Department officers had been unable to locate Williams despite attempts at all known telephone numbers and addresses and contacting local hospitals and jails. (*Id.* at PageID# 874-880).

Leigh's counsel argued that the state should be unable to use Angela Williams' testimony because the proceedings in juvenile court were not a full and fair hearing, principally because the defense lacked access to complete information to conduct a cross-examination, including Williams' prior convictions.[2] (*Id.* at PageID# 882). The trial court concluded that the state could use the recording of Angela Williams' prior testimony because she was an unavailable witness and the defense had the opportunity to cross-examine her at the August 3, 2018, juvenile court hearing. (*Id.* at PageID# 883). The state consequently played the taped testimony for the jury. (*Id.* at PageID# 917-918; ECF No. 27-4).

Leigh contends that the use of Angela Williams' taped testimony from the August 3, 2018, hearing violated his Confrontation Clause rights (Ground Eight) and the Court of Appeals analyzed the issue incorrectly (Grounds Six and Seven). The Confrontation Clause guarantees that "[i]n all

---

[2]     The record does not include information on the nature of the convictions.

criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable, and the accused has had a prior opportunity to cross-examine the declarant. *Id*. The cross-examination requirement's purpose is to enable the opponent to test witness credibility and the reliability of the proffered testimony. *Id*. at 61. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The right to cross-examine guaranteed by the Confrontation Clause includes the dual rights "to delve into the witness' story to test ... perceptions and memory" and impeach the witness by "revealing possible biases, prejudices, or ulterior motives." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Confrontation Clause violations are subject to harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The Court of Appeals denied Leigh's Confrontation Clause claim. (ECF No. 10 at PageID# 237-244). The court correctly identified *Crawford* as the controlling Supreme Court authority (*id.* at PageID# 238) and concluded that a prior opportunity for cross-examination was all that was required to satisfy the requirements of the Confrontation Clause. (*Id.* at PageID# 242). Leigh contends that he is entitled to habeas relief because the August 3, 2018, juvenile court hearing was not an adequate opportunity for cross-examination. (ECF No. 19 at PageID# 1397).

The Sixth Circuit has considered, and rejected, similar arguments seeking habeas relief based on a Confrontation Clause violation. The Sixth Circuit has noted that there is "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437–

38 (6th Cir. 2010). But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.* at 438. On federal habeas review, a state court's determination that testimony from the preliminary examination was properly admitted is not an unreasonable application of clearly established Supreme Court precedent. *Id.* at 438–40. In *Williams v. Bauman*, the Sixth Circuit likewise held that the petitioner's "suggestion that his preliminary hearing categorically did not afford him an adequate opportunity to cross-examine" failed under AEDPA because he did not "identify any Supreme Court precedent supporting his contention." *Williams v. Bauman*, 759 F.3d 630, 635–36 (6th Cir. 2014). While the efficacy of cross-examination during a preliminary hearing may be debatable, "[i]f there is room for reasonable debate on the issue, the state court's decision to align itself with one side of the argument is necessarily beyond th[e] court's power to remedy under § 2254, even if it turns out to be wrong." *Id.* at 636. *See also*, *Miller v. MacLaren*, 737 F. App'x 269, 274–75 (6th Cir. 2018) (same).

Even though the Sixth Circuit has questioned whether, under *Crawford*, prior opportunity for cross-examination is both a necessary and sufficient condition for compliance with the Confrontation Clause, habeas relief is not appropriate on Ground Eight because the Supreme Court has not addressed this specific question. Accordingly, the Court cannot say that the Court of Appeals was unreasonable for concluding that the use of Angela Williams' testimony met the requirements of the Confrontation Clause because it was subject to cross-examination. *See Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

Habeas relief is also not due for Ground Six, in which Leigh contends the Court of Appeals improperly reviewed his Confrontation Clause claim for abuse of discretion. The record reveals that the Court of Appeals reviewed the admissibility of Angela Williams' testimony under Ohio evidence rules for an abuse of discretion. (ECF No. 10 at PageID# 238). To the extent that Leigh is challenging the state appellate court's procedures, this type of claim is not cognizable in federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

To the extent that Leigh is arguing that the Court of Appeals' review of his Confrontation Clause claim was unconstitutional, that claim also fails. The record reveals that the Court of Appeals properly identified the Confrontation Clause as a separate constitutional issue from whether Willliams' testimony was admissible under the Ohio evidence rules and identified *Crawford* as the controlling Supreme Court authority. (*Id.* at PageID# 242). For federal habeas relief, Leigh is required to identify a conclusion from the Court of Appeals' opinion that is contrary to or an unreasonable application of federal law. As discussed above, this standard has not been met. Ground Six is without merit and should be dismissed.

In Ground Seven, Leigh contends that the Court of Appeals analyzed his Confrontation Clause claim incorrectly. (ECF No. 19 at PageID# 1396). Leigh describes the appropriate process as:

> When determining whether the introduction of the testimonial hearsay statements of an unavailable witness violates a defendant's confrontation clause rights, courts must first assess their admissibility under the evidence rules, and then, if otherwise admissible, separately determine whether their admission violates the constitution's demands. Otherwise, the hearsay rule swallows the constitution protection.

(*Id.*). It is unclear exactly what Leigh is arguing in Ground Seven. To be sure, the Confrontation clause is not triggered unless the testimony to be offered is hearsay. *Crawford*, 541 U.S. at 59. It appears that Leigh takes issue with the sequence of the Court of Appeals' opinion because it found

no Confrontation Clause violation before it concluded that the testimony was admissible under Ohio Evid.R. 804(8)(1). But because the Court of Appeals determined that there was no error in the trial court's handling of either issue, the ultimate conclusion was the same regardless of the way the opinion was organized. As mentioned above, habeas relief requires a demonstration that the Court of Appeals' opinion was contrary to or an unreasonable application of the Confrontation Clause or *Crawford*, which Leigh has not done. Ground Seven is without merit and should be dismissed.

All three of Leigh's Confrontation Clause claims, Grounds Six, Seven, and Eight, lack merit and should be dismissed.

### C. Merits of Procedurally Defaulted Claims

The following procedurally defaulted claims alternatively lack merit:

### i.    *Grounds One and Five*

In Grounds One and Five, Leigh contends that there was insufficient evidence[3] to convict him of improperly discharging a firearm at or into a habitation, in violation of O.R.C. §2923.16(A)(1), murder in violation of O.R.C. §2923.161, and involuntary manslaughter in violation of O.R.C. § 2903.04(A). (ECF No. 1-1 at PageID# 9, 13).

Leigh specifically argues that the state offered no testimony that he knowingly discharged a firearm into the house. (*Id.*). The Court of Appeals disagreed:

> {¶ 24} "The shooting of a gun in a place where there is a risk of injury to one or more persons supports the inference that appellant acted knowingly." *State v. Gregory*, 90 Ohio App.3d 124, 131, 628 N.E.2d 86, 91 (12th Dist.1993). In this case, the State's evidence established that the shooter fired at least seven bullets toward Mooty's occupied residence. Five bullets struck the home and entered both

---

[3]      Because a "manifest weight of the evidence" claim is not cognizable on federal habeas review, the Court will assume Grounds One and Five are asserting the same sufficiency of evidence claims asserted in Leigh's appeal to the Court of Appeals. *See Hoffman v. Lazaroff*, No. 18-3439, 2018 WL 5849894, at *3 (6th Cir. Sept. 17, 2018) (citing *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007)).

the first and second floors of the residence. Given the number of bullets fired, the location from which they were shot, and the number and location of the bullet strikes, the jury reasonably concluded that the shooter acted knowingly when firing at Mooty's residence.

{¶ 25} Finally, the State presented substantial circumstantial evidence that Leigh was the shooter. Marrico testified that he was not friends with Leigh and had only met him a couple of times. Marrico indicated that his communications with Leigh mainly were through Facebook Messenger with Leigh using the profile name "Brando So Humble."

{¶ 26} Marrico described how on February 14, 2018, two days before the shooting, Leigh had shown his 9 mm handgun to Marrico and Tillman, and Tillman had put the gun in his pocket and left with it. Leigh, believing that Marrico had stolen the gun, then sent Marrico a series of Facebook messages that Marrico interpreted as warnings to return the weapon. Marrico also received several phone calls from Brando So Humble that he did not answer. At 12:22 p.m. on February 15, the day before the shooting, Marrico received a message from Leigh, saying "This is the last time I'm telling you this You Gone Give me my sh*t or do you really want to go thru this." He received another similar message 26 minutes later. Then, a couple of minutes later, Leigh sent a message saying, "Ight Bet." After a few additional messages where Leigh asked Marrico where he was, Leigh wrote, "But just to tell this really the last time I'm asking you So * * * You Don't Tell me Nun in like an hour it's over * * *." At 3:14 p.m., Leigh sent a final message to Marrico saying "Bet."

{¶ 27} Detective Farkas testified about additional Facebook conversations between Leigh ("Brando So Humble") and (1) Tillman ("Lilreef Ah Realviewboy"); (2) Leigh's sister, Brittany Leigh ("Jai Bee"); (3) Gabrielle Marzhaka ("LightBright Gabby"); (4) an unidentified person who used the profile name "Ypn Prince;" (5) an unidentified person who used the profile name "Shamica Mariee;" (6) an unidentified person who used the profile name "Semaj Hall;" (7) Sir Christion Rogers ("Sir Christion Rogers"); and Theodore Shavers ("Nlmb Msrmar"). Detective Farkas created a timeline of the various communications, reflecting Leigh's statements that Marrico robbed him of a gun, his efforts to get Marrico to return it, and Leigh's efforts to find Marrico. At 12:40 p.m. on February 15, Leigh sent a message to Semaj Hall, saying "I need some bullets, some sh*t happened last night." Less than an hour later, Leigh's sister asked Leigh if he "want[ed] the house sprayed with ks [AK-47s or the like]" and she would buy him a gun later. Leigh later told Ypn Prince that he was robbed by Marrico. At 1:13 p.m. on February 16, Leigh wrote to Shavers to bring him a gun ("pole"). After February 16, Leigh's account did not include references to Marrico or getting his gun back.

{¶ 28} Angela Williams also testified about incriminating statements that Leigh made. Prior to the shooting, Williams heard Leigh say that one of his friends had taken his pistol and he needed to get it back. The next day, Williams heard Leigh

talking with his sister about meeting up to get another gun, which he needed to "get his sh*t back." A few days after the shooting, Williams saw information about it on Facebook. Williams testified that Leigh "came up and told [her]" that he was involved. She elaborated: "He walked up to me, he said, Auntie you – did you hear about what happened? I said, what you talking about? He said, the shooting. I said where, in Westwood, that girl that was pregnant? He said, yeah. He said – I said, why you have something to do with that? He said, what you mean I have something to do with it? I did it."

{¶ 29} During the afternoon of February 23, 2018, Lee, Leigh and Bobby Hunter saw a person who looked like a detective drive by Lee's house in a truck. Lee heard Leigh say, "I'm about to go to jail." Later that day, Leigh was arrested for the shooting.

(ECF No. 10 at PageID# 222-223). The Court of Appeals acknowledged that Leigh testified that he was not the shooter and denied sending the Facebook messages but found that it was the province of the jury to assess the credibility of witnesses and resolve conflicts in the evidence. (*Id.* at PageID# 225). The Court of Appeals concluded that the state presented sufficient evidence to sustain Leigh's convictions. (*Id.*).

The well-settled standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court held in *Jackson*, because the Due Process Clause requires the state to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the state need not rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not

affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Id.*; *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

Federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d at 205. The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011). The Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner...is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

567 F.3d at 205 (emphasis in original).

Leigh's sufficiency of evidence claims ask the Court to credit his testimony over the competing testimony and evidence offered by the state. The Court is required to defer to the jury's resolution of conflicts in the evidence. *Jackson*, 443 U.S. at 326. The Court also is not permitted

24

to substitute a different interpretation of the evidence when federal habeas review requires the Court to defer to the Court of Appeals' reasonable determination that the evidence was sufficient. *Brown*, 567 F.3d at 205. Grounds One and Five are meritless.

    *ii.*   *Ground Two*

In Ground Two, Leigh contends that the trial court committed reversible error by admitting the Facebook messages. (ECF No. 1-1 at PageID# 10). Respondent argues that issues concerning the admissibility of evidence are not cognizable on federal habeas review. (ECF No. 20 at PageID# 1424-1425).

During Leigh's trial, the prosecution relied on Facebook messages from an account associated with Leigh under the handle, "Brando so Humble." (ECF No. 10-3 at PageID# 860). The prosecution also introduced Facebook messages from Marrico Murray, who testified to their content. (*Id.* at PageID# 810-825). Murray identified Leigh as the person he communicated with through Facebook messages under handle "Brando so Humble," both in text messages and over voice calls. (*Id.* at PageID# 800-802, 806-825).

Through Detective Zachary Farkas, the state introduced messages from Shareef Tillman ("Little Reef"), Shuking Jones ("Shakah"), and Gabrielle Marzhuka ("Light Bright Gabby") (ECF No. 10-4 at PageID# 1058). Detective Farkas testified that he received the records from Facebook through a warrant. (*Id.*) He also testified that he was familiar with the slang used in the messages and interpreted them for the jury. (*Id.* at PageID# 1060, 1067-1082, 1107-1145).

Before trial, Leigh's counsel moved in limine to exclude the messages, arguing that the accounts lacked proper authentication. (ECF No. 10 at PageID# 39-40). The trial court reserved ruling until the relevant testimony, but over the defense's objection, ultimately ruled that the

prosecution laid a proper foundation. (ECF No. 10-2 at PageID# 639, ECF No. 10-3 at PageID# 800, ECF No. 10-4 at PageID# 1065-1066).

Discussed in Grounds One and Five, above, the messages included demands from Leigh to Murray to return his "shit," which Murray interpreted to be the gun, and the messages also included threats when Murray failed to respond. (ECF No. 10 at PageID# 222-223). The messages from the other accounts corroborated the state's theory that Murray stole Leigh's gun, and he tried to get Murray to return it. (ECF No. 10-4 at PageID# 1070-1080, 1122-1136). There was also a message between Leigh and his sister, that Detective Farkas interpreted as asking whether Leigh wanted a house sprayed with bullets. (*Id.* at PageID# 1141).

The Court of Appeals found that the Facebook messages were properly admitted under Ohio's evidence rules. (ECF No. 10 at PageID# 226-230). The Court of Appeals described the evidence of authentication as "ample," pointing to the warrant served on Facebook, the parties' stipulation that the email account associated with the "Brando So Humble" Facebook account was brandonleigh* • *@* * *.com, and the testimony of Marrico Murray. (*Id.*). The Court of Appeals also concluded that certain messages objected to by Leigh were not hearsay, but party opponent admissions under Ohio Evid. R. 801(D)(2)(a). (*Id.* at PageID# 229-230).

To the extent Leigh argues that this ruling is an incorrect interpretation of Ohio law, the claim is non-cognizable in federal habeas review. The extraordinary remedy of habeas corpus lies only for a violation of the United States Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a

federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

To the extent that Ground Two could be interpreted as an argument that the introduction of the Facebook messages violated due process, that argument also fails. To obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue. *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020). Leigh fails to identify any clearly established Supreme Court precedent that would preclude admission of the Facebook messages. Moreover, considering that the Court of Appeals concluded that the evidence was properly admitted, Leigh fails to demonstrate that his trial was fundamentally unfair.[4]  Ground Two should be dismissed for lack of merit.

### iii.    *Ground Three*

In Ground Three, Leigh contends that his trial counsel was ineffective for failing to object to the authentication of the audio tape of Angela Williams' testimony, a prejudicial juror, and "other acts" evidence. (ECF No. 1-1 at PageID# 11).

"In all criminal prosecutions," the Sixth Amendment affords "the accused...the right...to Assistance of Counsel for his defence." U.S. CONST. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish

---

[4]    Although Leigh testified at trial that the messages were not sent by him, he offers no proof, by clear and convincing evidence, that the state courts' conclusion that the messages were authentic was erroneous. *See* 28 U.S.C. § 2254(e)(1).

ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010). As to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." *Id.* at 694.

When an exhausted claim of ineffective assistance of trial counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). That is, "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether trial counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Supreme Court clarified the double deference that is due:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA,

28

> though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal citation omitted).

On direct appeal, Leigh challenged the authenticity of the audio recording of Angela Williams' testimony. (ECF No. 10 at PageID# 235-237). The Court of Appeals reviewed the claim for plain error because Leigh's trial counsel failed to object (*id.* at PageID# 236-237) and found that Leigh's argument lacked a factual basis:

> {¶71} In this case, the recording itself (State's Exhibit 99) leaves little doubt that it reflects Williams's probable cause hearing testimony. Although the trial court ordered that the juvenile court judge's preliminary statements not be played for the jury, the recording begins with the judge identifying himself, calling the case, indicating what proceedings were occurring, and identifying who was present in that courtroom. There is nothing to suggest that the recording is not what it purports to be. In the absence of an objection, we find no plain error in the trial court's admission of Williams's probable cause hearing testimony.
>
>                                              \*\*\*
>
> {¶102} With respect to defense counsel's failure to object to the lack of authentication of the probable cause hearing audio-recording and the admission of Facebook messages with other act evidence, we likewise conclude that Leigh's claims lack merit. Although the State did not offer any evidence to authenticate the audio recording of Williams's probable cause hearing testimony, there is no indication that the recording was not authentic, and defense counsel, in his professional judgment, could have opted not to raise the issue. Moreover, even if defense counsel had objected to the lack of authentication before the recording was played at trial, the recording would not necessarily have been excluded from evidence. Rather, the State would have had an opportunity to authenticate the exhibit prior to playing it for the jury.

(*Id.* at PageID# 237). Leigh has failed to demonstrate by clear and convincing evidence that the recording of Angela Williams' testimony lacks authenticity. *See* 28 U.S.C. § 2254(e)(1) ("...a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence."). Leigh cannot show either that his trial counsel was deficient for failing to object or that he was prejudiced, and this part of Ground Three fails both prongs of the *Strickland* test.

Next, Leigh faults his trial counsel for failing to object to a prejudicial juror. In his direct appeal, Leigh argued that his counsel should have stricken Juror #15 because the juror disclosed that he was the victim of a drive-by-shooting. (ECF No. 10 at PageID# 245-248).

| | |
|---|---|
| [PROSECUTOR]: | Let me ask you this; how long ago was that? |
| [JUROR #15]: | About a year ago. |
| [PROSECUTOR]: | Okay. Is that case being prosecuted, if you know? |
| [JUROR #15]: | No, sir. |
| [PROSECUTOR]: | Okay. Now, I've talked about the fact that one of the charges in this case is firing or the improper discharge of a firearm into a habitation. And it sounds like that case, and I don't know the facts of the case that you're talking about, but it sounds like it may be a similar, I don't know, factual situation where a firearm was involved at least. Knowing that, and knowing that you may hear evidence that's similar in nature, at least to some degree, will you be able to set aside the case that you're talking about, albeit, a year ago, and judge this case only on the evidence in court? |
| [JUROR #15]: | Yes, sir. |
| [PROSECUTOR]: | In other words, what we want to find out, kind of on the flip side of things is, because you had that terrible event happen that you're not going to say, you know what, I'm going to make sure that someone pays, okay, I don't care what the evidence is, all right. And that you'll actually sit and listen and judge the case on the evidence. That you're not going to be predisposed, for instance, to find someone guilty because of a situation in your past. It sounds like you don't have problem with that though? |
| [JUROR #15]: | That's correct. |
| [PROSECUTOR]: | Okay. You'll be able to be fair and impartial? |
| [JUROR #15]: | Yes, sir. |
| [PROSECUTOR]: | Okay. I appreciate your candor. * * * |

(ECF No. 27-2 at PageID# 1585-1586).

The Court of Appeals concluded, "[g]iven Juror #15's answers during voir dire, defense counsel could have reasonably concluded that he had no basis to seek Juror #15's removal for cause." (ECF No. 10 at PageID# 247). And "[w]hile one might question why defense counsel

elected to use peremptory challenges on other individuals rather than Juror #15, defense counsel's decision was within the realm of trial strategy, which we will not second-guess." *Id.* at 248. The Court of Appeals found that that there was no "reasonable probability that the outcome of the trial would have been different had defense counsel made different decisions during jury selection." (*Id.*).

In his motion for reconsideration, Leigh advanced an additional argument that he was denied a fair trial because the juror suffered from implied bias. (*Id.* at PageID# 332-340). The Court of Appeals rejected this argument, too, and found that the motion was untimely. The court also found that the federal construct of "implied juror bias" was codified in Ohio's "for cause" challenges under Ohio Crim. R. 24(C) and O.R.C. § 2945.25 and there was no error in the court's original opinion that Leigh's counsel was not ineffective for failing to challenge Juror #15. (*Id.* at PageID# 360).

The doctrine of presumed or implied, as opposed to actual, bias provides that, in certain extreme or exceptional cases, courts should employ a conclusive presumption that a juror is biased. *United States v. Frost*, 125 F.3d 346, 379 (6th Cir. 1997) (citations omitted). A finding of implied bias is appropriate only "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Pers. v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988).

At any rate, Leigh has asserted an ineffective assistance of counsel claim. When a defendant bases an ineffective assistance claim on an assertion that his counsel allowed the seating of a biased juror, the defendant "*must* show that the juror was *actually biased* against him." (emphasis added). *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (citing *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001)).

The Court of Appeals concluded that Juror #15 "gave no indication that he would be predisposed to find Leigh guilty based on the drive-by-shooting of his house in Denver." (ECF No. 10 at PageID# 247). This Court, sitting in federal habeas review, is bound to defer to that conclusion. *See Anes v. Jackson*, No. 17-1920, 2018 WL 741696, at *3 (6th Cir. Jan. 4, 2018) ("a state court's finding regarding a juror's impartiality is presumptively correct under 28 U.S.C. § 2254(d)"). This Court is also bound to defer to the Court of Appeals' conclusion that Leigh's counsel was not ineffective for failing to strike Juror #15.

Lastly, Leigh argues that his counsel was ineffective for failing to object to the admission of "other crimes" evidence included in the Facebook messages. The Court of Appeals concluded that Leigh's "counsel did not act deficiently in failing to object to those messages under Ohio Evid. R. 404(B) and O.R.C. § 2945.59" because the trial court did not err in admitting the messages into evidence. (ECF No. 10 at PageID# 248). Because the evidence was admissible under Ohio law, this part of Ground Three fails both prongs of the *Strickland* test.

Ground Three, including all sub-parts, lacks merit.

iv. *Ground Four*

In Ground Four, Leigh contends that he is entitled to habeas relief on grounds of cumulative error. (ECF No. 1-1 at PageID# 12). Respondent argues that Ground Four is non-cognizable in federal habeas review. (ECF No. 20 at PageID# 1426). The Court agrees. Claims of cumulative error do not demonstrate a constitutional claim in a habeas case. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

v. *Ground Nine*

In Ground Nine, Leigh asserts a trial court error of implied juror bias. (ECF No. 19 at PageID# 1398). Like his argument in Ground Three, Leigh argues that he was denied a fair trial

because Juror #15 admitted during voir dire that he had been a victim of a drive-by-shooting. The

Sixth Circuit has rejected a similar implied juror bias claims on federal habeas review:

> This court has expressed some doubt about the doctrinal viability of imputing juror bias, *Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir. 2010), going as far as to hold that *Smith* is not clearly established for AEDPA purposes, *Cutts v. Smith*, 630 Fed.Appx. 505, 509 (6th Cir. 2015). Even if *Smith* was clearly established, it is clearly inapposite. *Smith* involved compromising information about a particular juror that was not subject to questioning in voir dire, unlike in this case. *Smith*, 455 U. S. at 212–13 (majority opinion). In addition, *Smith* effectively rejected the argument that bias should be imputed or implied based only on circumstances suggesting possible bias that were adequately probed during voir dire, notwithstanding a juror's testimony that he or she could remain impartial, without some other evidence to support an allegation of bias. *See id.* at 215–17. Finally, *Smith* also emphasized that, in habeas proceedings, a state court's finding regarding a juror's impartiality is presumptively correct under 28 U.S.C. § 2254(d). *Id.* at 218.

*Anes v. Jackson*, No. 17-1920, 2018 WL 741696, at *3 (6th Cir. Jan. 4, 2018).

Assuming *Smith* is clearly established, Leigh is not entitled to habeas relief. Juror #15 was

subjected to voir dire questioning about his potential bias and Leigh has offered no other evidence

of Juror #15's bias that would contradict his responses. Critically, Juror #15 lacks the close ties to

the case required to prove implied bias. *See Smith*, 455 U.S. at 222 (O'Connor, J., concurring)

("…that the juror is an actual employee of the prosecuting agency, that the juror is a close relative

of one of the participants in the trial or the criminal transaction, or that the juror was a witness or

somehow involved in the criminal transaction."). Finally, as noted in Ground Three, this Court is

bound to defer to the Court of Appeals' conclusion that Juror #15 "gave no indication that he

would be predisposed to find Leigh guilty based on the drive-by-shooting of his house in Denver."

(ECF No. 10 at PageID# 247). *See also Anes*, 2018 WL 741696, at *3. Ground Nine is without

merit.

     *vi.*    *Ground Ten*

In Ground Ten, Leigh contends that his Fourth Amendment rights were violated by a warrantless arrest. (ECF No. 19 at PageID# 1399-1400). The Respondent argues that Ground Ten is non-cognizable in federal habeas review. (ECF No. 20 at PageID# 1432). The Court agrees.

"[W]here the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). Clearly established precedent explains, *Powell*'s "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Consequently, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.*

The *only* relevant question for this federal habeas Court is whether Leigh was given a chance to present his Fourth Amendment claim to the Ohio state courts. There is no indication in the state court record that Leigh was prevented from raising a Fourth Amendment claim to the Ohio trial or appellate courts. Leigh was not denied an opportunity to present his claim in state court and as a result, his Fourth Amendment claim is not cognizable in habeas corpus and lacks merit.

## V.     CONCLUSION

Leigh's claims are without merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1-1, 19) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "viable claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by a petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.

October 17, 2025                                    *s/ Elizabeth A. Preston Deavers*
                                                         Elizabeth A. Preston Deavers
                                                         UNITED STATES MAGISTRATE JUDGE